**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1828-19

PAUL RUSSAK,

     Plaintiff-Respondent,

v.

FINETTE RUSSAK,

     Defendant-Appellant.

_____

Argued December 2, 2021 – Decided December 20, 2021

Before Judges Mawla and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FM-10-0288-18.

Allen J. Scazafabo, Jr., argued the cause for appellant (Riker Danzig Scherer Hyland & Perretti, LLP, attorneys; Allen J. Scazafabo, Jr., of counsel and on the briefs; Alyssa DeFuria, on the briefs).

Michael J. Weil argued the cause for respondent (Snyder Sarno D'Aniello Maceri & da Costa, LLC, attorneys; Michael J. Weil, of counsel and on the brief; Jonathan Gonzalez, on the brief).

PER CURIAM

Defendant Finette Russak appeals from a November 21, 2019 final judgment of divorce entered following a sixteen-day trial. Judge Robert G. Wilson heard testimony from defendant, plaintiff Paul Russak, two of the parties' adult children, and three other fact witnesses. He also considered a voluminous record, including documents, a video, and electronic recordings admitted into evidence. He issued a lengthy decision detailing his findings, which we now affirm.

The parties had been married for nearly four decades when plaintiff filed for divorce in January 2018. Plaintiff was sixty-four and defendant sixty-two years of age when the matter was tried. Plaintiff was the sole wage earner, operating a solo non-CPA tax preparation business. He also worked for seven years as the director of finance for a law firm earning approximately $150,000 per year until he was laid off in 2013. Defendant was a homemaker and raised the children with help from plaintiff. Both parties have health problems.

During the marriage, plaintiff acquired three pensions, which went into pay status in 2019 at approximately $1,500 per month. At trial and in her summation, defendant waived equitable distribution from the pensions and urged the judge to instead include the pension income in the alimony calculation.

2

Plaintiff also had an IRA which by November 2014 was valued at approximately $326,683. After the law firm laid off plaintiff, he made a series of significant withdrawals between 2014 and 2018 to meet the family's expenses. He continued to draw on the account pendente lite to meet expenses and fund the parties' attorneys' fees. Defendant argued he dissipated the asset.

Defendant also argued plaintiff was underemployed and could earn $50,000 in addition to the business earnings. Plaintiff testified he searched extensively for employment following his termination. One of the children corroborated his efforts, noting several conversations with him where he expressed frustration about not finding comparable employment. In 2014, after approximately a year of job searching, plaintiff took a series of jobs as a cashier to support the family until 2015, when he took a family leave of absence to help defendant with her medical needs. He did not return to work after leave ended.

During this time period, plaintiff continued operating his tax preparation business. He testified the business operated from his home, was seasonal, and served approximately 120 clients. It only advertised through Facebook and owned no assets. Between 2016 and 2018, the business generated an average yearly gross revenue of $43,024. Neither party offered expert testimony regarding the business's value or plaintiff's employability.

A-1828-19

Each party requested an award of counsel fees. Plaintiff incurred approximately $160,000 in fees and requested defendant pay $60,000, and defendant incurred about $167,000 in addition to an unknown sum with prior counsel, and requested plaintiff pay $167,608.35. Prior to trial, the judge ordered the parties to exchange their "last best" settlement offers to avoid the trial. He directed counsel to submit the sealed offers to him to consider in deciding the counsel fee issue; a procedure neither party objected to.

Although the parties filed joint tax returns for tax years 2013-16, defendant testified plaintiff underreported his income for 2013-15. The trial evidence also showed there were no receipts for business expenses plaintiff testified to and he could not recall the charitable organizations the parties donated to on their returns. Plaintiff did not declare gifts received from his clients in lieu of payment for his tax preparation services. Defendant claimed no knowledge of the underreported income. She asserted she was not permitted to review the returns and only presented the signature page for her endorsement.

After the trial and written summations, defendant's counsel wrote to the judge, advising her client would not qualify for Medicaid if she reported alimony income and instead requested the pensions be equitably distributed. Counsel stated: "In light of this new information about [health insurance] . . . coverage

4

and alimony, we also ask the [c]ourt to now consider modifying by increasing [defendant]'s living expenses by at least $10,000 yearly to partly account for the higher costs of health insurance . . . ." The judge also learned plaintiff had begun collecting social security benefits, a fact defendant acknowledged.

In his detailed findings, the judge concluded plaintiff was more credible than defendant. The judge awarded plaintiff the pensions and denied defendant's request for equitable distribution reasoning she did not file a formal application to reopen the record.

The judge rejected defendant's dissipation claim finding she did not meet her burden of proof. He concluded the funds were necessary to replace plaintiff's lost earnings and meet the parties' needs, including defendant's health insurance expenses.

Citing plaintiff's testimony regarding his job search, the parties' child's testimony corroborating plaintiff's effort, and the lack of evidence to the contrary, the judge concluded defendant did not prove plaintiff could earn an additional $50,000. Instead, the judge imputed additional earnings of $17,550 based on a thirty-seven-and-one-half hour work week, using the minimum wage rate in Massachusetts where plaintiff resides. The judge totaled plaintiff's

A-1828-19

earnings at $88,242, comprised of the business earnings, imputed income, pension payments, and social security benefits.

The judge found the business had no value to equitably distribute. He noted neither party had it appraised, and given the facts in evidence, he could not equitably distribute the business and also require plaintiff to pay alimony.

Analyzing the statutory alimony factors, the judge rejected defendant's demand for $4,600 per month finding it exceeded "both her reasonable . . . needs and [plaintiff's] ability to pay and meet his needs." He awarded defendant open durational alimony of $2,500 per month.

The judge also ordered the sale and equal equitable distribution of the marital residence and plaintiff's "massive assortment of collectibles and other personal property" totaling over 300,000 items acquired during the marriage. The judge awarded defendant most of the proceeds of a mold litigation settlement and made other equitable distribution of assets not relevant to this appeal.

The judge also ordered an equitable distribution of various liabilities, including taxes from the liquidation of the IRA, concluding defendant should share in the tax liability because she benefitted from the IRA funds. He rejected defendant's testimony she lacked knowledge of the underreported income and

6

other tax improprieties as not credible. The judge found plaintiff's testimony more credible "that [defendant] had full access to the returns and that she willingly signed them and allowed them to be filed." He referred the parties to federal and state authorities for suspected tax fraud.

Addressing the Rule 5:3-5(c) factors, the judge characterized the parties' financial circumstances as "rather dire." He concluded neither had the ability to pay their own fees and each had been previously awarded fees for their conduct during the litigation. He also noted they each incurred fees to compel discovery and enforce court orders. While the judge found neither party acted in bad faith, he concluded they each played a role in prolonging the litigation.

The judge reviewed the sealed offers and concluded plaintiff's "proposal was dramatically more reasonable." He found aside from alimony "with respect to virtually every other issue in the case, the court made decisions close to that which [plaintiff] was willing to settle for, or decisions even more favorable to him than he suggested to resolve the matter. [Defendant's] settlement positions vastly differed from the court's determinations." The judge and awarded plaintiff approximately $16,000 in counsel fees.

Defendant raises the following points on appeal:

> I. THE TRIAL COURT ERRED WHEN AWARDING EQUITABLE DISTRIBUTION OF

MARITAL ASSETS, SPECIFICALLY, RESPONDENT'S PENSIONS, IRA AND BUSINESS, AS IT DID NOT MAKE A PROPER FINDING OF FACT AND CONCLUSION OF LAW APPLYING RELEVANT CASE LAW TO THE FACTORS SET FORTH [IN] N.J.S.A. 2A:34-23.1.

     A.   IT WAS AN ERROR FOR THE COURT NOT TO AWARD EQUITABLE DISTRIBUTION OF THE RETIREMENT ASSETS, SPECIFICALLY, RESPONDENT'S THREE PENSIONS.

     B.   IT WAS AN ERROR OF THE COURT NOT TO CONSIDER RESPONDENT'S UNILATERAL DISSIPATION OF THE JANN[E]Y IRA WHEN AWARDING EQUITABLE DISTRIBUTION OF THE IRA AND TAX CONSEQUENCES.

     C.   IT WAS AN ABUSE OF DISCRETION AND ERROR FOR THE COURT NOT TO MAKE ANY FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING AN AWARD OF EQUITABLE DISTRIBUTION OF THE RESPONDENT'S ACCOUNTING BUSINESS OR MAKE ANY ATTEMPT TO VALUE OR DISTRIBUTE IT OR HAVE IT VALUED POST-JUDGMENT.

II.   THE COURT ERRED WHEN AWARDING ALIMONY, AS IT DID NOT PROPERLY IMPUTE RESPONDENT AT HIS FULL EARNING CAPACITY.

III.   THE TRIAL COURT CLEARLY ERRED AND ABUSED ITS DISCRETION IN AWARDING COUNSEL FEES AGAINST THE APPELLANT AS IT DID NOT MAKE A PROPER FINDING OF FACT AND CONCLUSION OF LAW APPLYING THE

FACTORS IN R[ULE] 5:3-5, AS THE COURT REASONED THAT APPELLANT'S SETTLEMENT OFFER WAS NOT IN ACCORD WITH THE COURT'S RULING.

IV. THE COURT ABUSED ITS DISCRETION IN MAKING A FINDING THAT APPELLANT UNDER-REPORTED INCOME AND POTENTIALLY COMMITTED FRAUD.

We defer to a trial judge's factfinding "when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). "We do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." M.G. v. S.M., 457 N.J. Super. 286, 293 (App. Div. 2018) (quoting Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). However, "legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The Family Part has "special jurisdiction and expertise in family matters," which often requires the exercise of reasoned discretion. Cesare, 154 N.J. at 413. Family Part judges have broad discretion to allocate assets subject to equitable distribution, Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012) (citing Steneken v. Steneken, 367 N.J. Super. 427, 435 (App. Div. 2004)), and to make alimony determinations. Martindell v. Martindell, 21 N.J. 341, 355 (1956). Income imputation decisions are also discretionary, Storey v. Storey, 373 N.J. Super. 464, 474 (App. Div. 2004), as are counsel fee determinations. Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011). If we conclude there is satisfactory evidentiary support for the trial judge's findings, our "task is complete and [we] should not disturb the result . . . ." Beck v. Beck, 86 N.J. 480, 496 (1981) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

Having reviewed the arguments raised on appeal pursuant to these principles, we affirm substantially for the reasons expressed in Judge Wilson's thoughtful and well-written opinion. We add the following comments.

Our review of the trial court's evidential rulings "is limited to examining the decision for abuse of discretion." Parker v. Poole, 440 N.J. Super. 7, 16 (App. Div. 2015) (quoting Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008)). We only

reverse if the error "is of such a nature as to have been clearly capable of producing an unjust result." Ibid. (quoting R. 2:10-2).

The judge did not err in declining to consider defendant's informal post-trial request for equitable distribution of the pensions. Juxtaposed with the judge's acknowledgment after trial of plaintiff's receipt of social security funds, which defendant did not dispute, defendant's request was accompanied by a request to substantively modify her budgetary needs. This request was unsupported by the evidence in the record and amounted to a change in defendant's testimony. If the judge unilaterally granted it, he would have deprived plaintiff of cross-examination and the ability to challenge defendant's representations. The right to cross-examine defendant was particularly important given the judge's findings regarding her lack of credibility. We agree a motion was required if defendant sought to reopen the evidentiary record.

Finally, we reject defendant's argument the counsel fee award was predicated exclusively on the settlement offers. A thorough reading of the record shows the judge considered and applied all the relevant Rule 5:3-5(c) factors. The settlement proposals were relevant to his assessment of Rule 5:3-5(c)(3) and (7), which respectively require the court to consider the reasonableness of the parties' positions during and prior to trial, and the results

obtained.  Both factors favored plaintiff.  Accordingly, the judge's findings were supported by the substantial credible evidence and were not reversible error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION